December 12th, 1904.

————o————

No. 3586.

(Court of Appeal, Parish of Orleans.)

BERNARD EISERLOH vs. N. O. RAILWAYS C.O

Appeal from Civil District Court, Division "C."

Harry H. Hall for Defendant and Appellant.

B. R. Forman, for Plaintiff and Appellee.

1. It is generally held that a railroad company is not bound to provide the best or most approved appliances, but may use such as are reasonably fit for the purpose or that may be in general use on well managed railroads.

2. A charge by the Court, that the case depends upon matter of law and not upon matter of fact strips the conclusions of fact of the jury of their value.

DUFOUR, J. From a verdict of a jury and a judgment thereon against it for the value of a mule killed by the alleged negligence of the motorneer of one of defendant's cars, this appeal has been taken.

There is considerable conflict of testimony as to whether the

62

electric street lights were burning, or the car gong was rung, or the track was slippery and other matters which we find immaterial for the properly solution of the question at issue.

Our conclusions of fact are that the plaintiff's grocery float was moving down town on the defendant's track on Royal street and that, when it reached the middle of the block between Dumaine and St. Philip, the driver saw the lights of the car moving up Royal, and then being about the middle of the block between St. Philip and Ursulines.

Instead of moving off the track to get out of the way of the car, the float driver trotted his mules to reach and turn into St. Philip St. before the car reached that corner, and this act was the proximate cause of the accident.

The evidence is conclusive that the four wheels of the float fit the track, and that the space between the rails and the curbs was amply sufficient to enable the vehicle to avoid the car, if driven off that track. The float had no light as required by the City ordinance, the hour was about 6 p. m., in the middle of December, and it was dusk, if not dark. As soon as the motorneer heard shouts and saw the float, he did all in his power to avoid the accident, but failed. The car was running at half speed and appears to have been checked almost immediately upon colliding with the mule.

One of the charges of the trial judge was as follows:

"I charge you, that it is the duty of a railroad company running cars through the crowded streets of a city to run them at such a rate of speed only that they can be stopped within a distance at which an object can be seen on the track ahead, and if you find there were in this instance no such appliances as would enable the motorneer to see objects on the track ahead at a distance within which the car could be stopped, then the company has been negligent and is liable for the accident which occurred."

To which defendant excepted as follows:

"I except to that part of the charge where your Honor states

that it is the duty of the company to have appliances on the car to enable its motorneer to see objects upon the track at a distance within which the car can be stopped, for the reason that there are no appliances of any kind upon the car put there for the purpose of enabling the motorneer to see objects upon the street."

The exception is well founded. The lights are placed on the cars for the purpose of giving warning of their approach, and we know of no rule of law which makes it negligence *per se* for a railroad company to have such a light as will enable the motorneer to see objects upon the track at a distance within which the car can be stopped.

"It is generallly held that a railroad company is not bound to provide the best or most approved appliances, but may use such as are reasonably fit for the purpose or that may be in general use on well managed railroads." Bailey on Personal Injuries, Sec. 135.

The evidence shows that the arc lights which throw a light far ahead on the track were tried, found unsatisfactory for practical purposes and discarded, and in their stead were substituted the present incandescent Syracuse headlights, which are the standard headlights of the United States. The defendant could not reasonably be expected to do more.

It further appears that, when asked by defendant's counsel "how about the question of contributory negligence?" the Court answered: "I don't think it applies. I look at this case as dependent upon *matter of law* and not upon *matter of fact.*"

This was practically instructing the jury to find for plaintiff and merely to fix the damages, and their verdict therefor, so far as any presumption attaches to their finding of facts, is practically valueless. Our appreciation of the record has led us to a different conclusion.

The verdict is set aside, the judgment is reversed and it is now

ordered that plaintiff's demand be rejected at his cost in both Courts.

December 27th, 1904.

(Rehearing refused, January 23rd, 1905.